IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMARCUS FENNELL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 18-4870** |
| | : | |
| **CHARLES HORVATH**, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                **May 3, 2019**

A *pro se* pretrial detainee in custody at Northampton County Prison challenging prison conditions and treatment by Prison agents is initially entitled to timely sue anyone and everyone who he thinks caused him harm if he has a good faith basis for his facts. But he needs to plead facts giving rise to constitutional claims as to each person he chose to sue. If he cannot do so, we dismiss those persons. We also cannot proceed into discovery on his constitutional claims which are not recognized in the law. After studying the pretrial detainee's *pro se* claims against several Northampton County Prison agents, we partially grant the prison agents' motion to dismiss claims which are either not plead or not recognized under the Law. We will proceed into discovery on the remaining claims relating to specific harms allegedly caused by identified Prison agents.

## I.    Alleged facts.

JaMarcus Fennell *pro se* sues several Northampton County Prison officials for violating his constitutional rights as a pretrial detainee: Warden David Penchishen; Deputy Warden Mark Bartholomew[1]; Treatment Coordinator Thomas Herstich[2]; and Hearing Examiner John Harman[3]; Deputy Warden Bartholomew, Coordinator Herstich, and Examiner Harman hold disciplinary

hearings for prisoner misconduct.[4]  He also sues Charles Horvath as an officer with the Internal

Affairs department at the Prison.[5]

He also sues Officers Colarusso, Shultz, Parsons, Santiago, Kozma, Walker, Patterson,

Santos, Castro, Giazono, and Wagner who work as correctional officers at the Prison.[6] He also

sues Lieutenants Heinrich, Cruz, Rinker, Chlewboski, and Warning, and Captains Collins and

Werley.[7]

### *Officer Horvath's August 13, 2018 interrogation.*

On August 13, 2018, Officer Horvath brought Mr. Fennell into an interrogation room at

the Prison.[8]  Officer Horvath told Mr. Fennell he listened to his phone calls and accused Mr.

Fennell of "illegal dealings."[9] Mr. Fennell told Officer Horvath he had not given him his Miranda

warnings.[10] Mr. Fennell also asked for an attorney and invoked his Fifth Amendment rights.[11]

Officer Horvath continued questioning Mr. Fennell and threatened him and his fiancé.[12] When Mr.

Fennell attempted to leave the interrogation room, Officer Horvath blocked the doorway.[13] Officer

Horvath let Mr. Fennell leave after he began convulsing and having panic attacks.[14] Officer

Horvath issued him a false misconduct report.[15]

Sometime later, Examiner Harman held a disciplinary hearing for Mr. Fennell.[16] Examiner

Harman sentenced him to forty-five days of solitary confinement.[17] Examiner Harman told him he

could appeal the decision.[18] Mr. Fennell appealed to nonparty James Kleinman who denied the

appeal without "raising any of the issues [Mr. Fennell] attempted to address."[19] Mr. Fennell then

obtained "confidential and factual information" confirming Officer Horvath, Mr. Kleinman, and

Examiner Harman conspired to give inmates excessive solitary confinement if they refused to give

incriminating information.[20]

***Officer Colarusso's treatment of Mr. Fennell.***

Mr. Fennell alleges Officer John Colarusso abused him from August to December 2018. On August 23, 2018, Officer Colarusso and Officer McDermott moved Mr. Fennell into the cell of his "enemy."[21] After Mr. Fennell requested transfer, Officer Colarusso called Mr. Fennell a "snitch" and told him "I'll kill your family."[22] Officer Colarusso threatened to shut off Mr. Fennell's water after Mr. Fennell told him he needed to use the bathroom.[23] Officer Colarusso also told Mr. Fennell he would watch him urinate and placed his face on Mr. Fennell's cell door.[24] Mr. Fennell screamed for a lieutenant.[25] Officer Colarusso fired a mace gun in Mr. Fennell's direction but he dodged the spray.[26] Lieutenant Chlewboski transferred Mr. Fennell and told him Officer Colarusso moved him "without proper authorization."[27]

From August 24, 2018 through September 1, 2018, Officer Colarusso threatened Mr. Fennell and yelled "disparaging comments."[28] He called Mr. Fennell a "snitch" and asked other inmates to assault Mr. Fennell in retaliation for telling Lieutenant Chlewboski about Officer Colarusso's threats.[29] Officer Colarusso encouraged other inmates to call Mr. Fennell a "snitch."[30]

On September 1, 2018, Officers Colarusso and Giazono, and nonparty Officers McDermott, Fry, and Bobyack searched Mr. Fennell's cell.[31] Officers Bobyack and Giazono strip searched Mr. Fennell.[32] Mr. Fennell complained about the treatment.[33] Officer Colarusso issued a false misconduct report alleging Mr. Fennell spat at guards and accused prison correctional officers of bringing tobacco to prison.[34]

On September 2, 2018, Officers Colarusso and McDermott and unnamed inmates entered Mr. Fennell's cell.[35] Mr. Fennell asked to speak with a lieutenant.[36] Officer Colarusso encouraged inmates to threaten and insult Mr. Fennell.[37] Mr. Fennell asked another inmate to call someone to report the officers' treatment.[38] Officer Colarusso ordered an inmate to call Mr. Fennell's fiancé

and harass her.[39] Officer Colarusso then hung a sheet with his fiancé's phone number on a bulletin board and wrote "Free Whore" on it.[40] Mr. Fennell told Lieutenant Rinker about the incident and filed a grievance on September 4, 2018.[41]

From September 5 through 12, 2018, Officer Colarusso called Mr. Fennell a "snitch" and offered to pay inmates to assault Mr. Fennell.[42]

On September 13, 2018, Officer Colarusso entered Mr. Fennell's cell and told his cellmate Mr. Fennell is a "snitch."[43] Officer Colarusso falsely reported Mr. Fennell for hiding medication in his cell.[44] After this incident, the prison officials placed Mr. Fennell in a suicide prevention unit.[45]

On October 14 and 17, 2018, Officer Colarusso called Mr. Fennell a "snitch" and asked inmates to assault Mr. Fennell.[46] On October 18, 2018, Officer Colarusso loudly announced Mr. Fennell "was his favorite bitch" and his "personal court reporter."[47]

October 25, 2018, Officer Colarusso denied Mr. Fennell the ability to file a grievance and denied him a shower during a three-day jail lockdown.[48] He continued threatening Mr. Fennell, calling him a "snitch," and asking inmates "who wants to get paid" to assault Mr. Fennell.[49] Mr. Fennell alleges at some point, Officer Colarusso paid an inmate to attack Mr. Fennell with a knife, resulting in a gash on his left hand.[50]

***Mr. Fennell's November 14, 2018 lawsuit and subsequent mistreatment.***

On November 14, 2018, Mr. Fennell served Northampton County prison officials with this lawsuit.[51] On December 6, 2018, Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner strip searched Mr. Fennell in his cell.[52] Officer Giazono stabbed Mr. Fennell with a handcuff key.[53] Lieutenant Heinrich told Mr. Fennell "Maybe you should just get another lawsuit on us" and threatened him with a police dog until Mr. Fennell suffered a panic attack.[54] Lieutenant

Cruz held a taser to Mr. Fennell's head and ordered him to get on his knees and move his "penis up and down."[55] After he refused, Lieutenant Cruz handcuffed Mr. Fennell and ordered an unnamed nurse to move his penis "in a sexual motion."[56] Officer Wagner threatened him with violence if he did not comply with the officers' orders.[57] These Defendants turned the heat in his cell to ninety degrees.[58] As they left, Officer Giazono spit in Mr. Fennell's food tray and told a nonparty officer to ignore Mr. Fennell's requests.[59]

Mr. Fennell complained about the December 6, 2018 incident to Captains Collins and Werley, Lieutenants Chlewboski, Warning, and Rinker, Examiner Harman, and Warden Penchishen.[60] Mr. Fennell alleges these officials knew of the December 6, 2018 strip search and Officer Colarusso's abuse but did not stop it.[61]

On December 19, 2018, Officer Kozma threw out Mr. Fennell's soap and hit Mr. Fennell in the shoulder with his cell door.[62] Officer Kozma also threw his possessions on the floor.[63] Officer Kozma falsified a misconduct report.[64]

On December 21, 2018, after Mr. Fennell asked for toilet paper and cleaning supplies, Officer Walker told Mr. Fennell and other inmates, "You ni**as ain't getting sh*t until second shift so don't ask me for sh*t."[65] Officer Walker issued him a false misconduct report.[66]

On January 4, 2019, upon returning to his cell after a shower, Mr. Fennell saw the words "Colarusso Rules You" scratched into the wall.[67] Mr. Fennell asked Captain Collins to investigate the incident, but Captain Collins failed to do so.[68]

On January 10, 2019, Officer Patterson ordered Mr. Fennell to put on a jumper before he used the shower.[69] Mr. Fennell alleges the shower area contained black mold and, under prison policy, inmates could wear sweatpants instead of a jumper under these conditions.[70] Officer Patterson falsified a misconduct report against Mr. Fennell to keep him in solitary confinement.[71]

Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew denied Mr. Fennell a hearing for Officer Patterson's January 10, 2019 misconduct report keeping him in solitary confinement for ten days.[72]

On January 12, 2019, Officers Santos and Castro entered Mr. Fennell's cell and shook him awake.[73] They threatened to punch Mr. Fennell and slammed his cell door when they left.[74]

On January 9, 2019, we dismissed in part Mr. Fennell's initial complaint.[75] We allowed Mr. Fennell's Fifth Amendment claim against Officer Horvath to proceed.[76]

### *Mr. Fennell's legal claims.*

On January 31, 2019, Mr. Fennell filed his Amended Complaint.[77] He sues Officer Horvath for violating (1) his First Amendment rights by listening to his phone calls; (3) his Fifth Amendment right against self-incrimination by refusing to honor his invocation of his rights during the August 13, 2018 interrogation and retaliating against him for invoking those rights; (4) his Sixth Amendment rights by denying him counsel during questioning on August 13, 2018; (5) his Thirteenth Amendment right against involuntary servitude. He also sues Examiner Harman for listening to his phone calls.

He sues Officer Colarusso for violating his Eighth Amendment rights by (1) labeling him a "snitch," (2) harassing him, (3) spraying a mace gun at him, (4) issuing false misconduct reports, and (5) paying an inmate to attack him. He also sues Officer Colarusso under the Ninth Amendment for verbally abusing him.

He sues Officers Santiago, Parsons, Giazono, Wagner, and Shultz, and Lieutenants Heinrich and Cruz under the Eighth Amendment and Thirteenth Amendment for the December 6, 2018 strip search. He also alleges these officers retaliated against him for filing his November 14, 2018 lawsuit.

He sues Lieutenants Rinker, Chlewboski, and Warning, Captains Collins and Werley, Coordinator Herstich, Examiner Harman, Warden Penchishen, and Deputy Warden Bartholomew for conspiring to deprive him of his civil rights. He sues Officer Horvath and Examiner Harman for separately conspiring to put Mr. Fennell in solitary confinement for invoking his Fifth Amendment rights.

He sues Officers Kozma, Walker, Santos, Castro, and Patterson under the Eighth Amendment, Ninth Amendment, and Thirteenth Amendment. He also sues these officers for retaliating against him and conspiring to deprive him of his civil rights.

He sues Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew for deprivation of due process when they denied him a hearing following Officer Patterson's January 10, 2019 misconduct report.

## II.      Analysis.[78]

Defendants move to dismiss Mr. Fennell's Amended Complaint.[79] Officer Horvath does not move to dismiss Mr. Fennell's Fifth Amendment claim. We earlier held Mr. Fennell states a Fifth Amendment claim against Officer Horvath.[80]

Mr. Fennell brings his constitutional claims against individual Defendants under 42 U.S.C. § 1983. To state a § 1983 claim against an individual, Mr. Fennell must allege the Defendant, acting under color of law, violated his constitutional or statutory rights, and caused the alleged injury.[81] Mr. Fennell must allege each Defendant's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior."[82] Mr. Fennell can show personal involvement with allegations of "personal direction or of actual knowledge and acquiescence."[83]

7

**A.** **We dismiss Mr. Fennell's First Amendment claim against Officer Horvath and Examiner Harman for listening to his phone calls.**

Mr. Fennell alleges Officer Horvath and Examiner Harman violated his First Amendment rights by listening to his phone calls.[84] Officer Horvath and Examiner Harman argue a prisoner has no constitutional right preventing prison officials from listening to his phone calls.

We find no authority in our Circuit recognizing a First Amendment claim for prison officials' monitoring his phone calls.

Only Officer Horvath and Examiner Harman cite authority from our Circuit. In *United States v. Korbe*, the defendant moved to suppress transcripts of phone calls she made while incarcerated at Allegheny County Jail and later Cambria County Prison.[85] Under policy, both the Jail and the Prison recorded all prisoner phone calls except calls with an attorney. The defendant argued the "procedure by which phone calls are systematically recorded and provided to prosecutors for use unconstitutionally interferes with her exercise of" her First Amendment rights.[86] The district court denied the motion explaining the defendant suffered no deprivation of her First Amendment rights since inmates could "meet with visitors at the jail in settings that are neither monitored nor recorded."[87]

In *United States v. Colbert*, the United States indicted twenty-seven defendants for a racketeering conspiracy.[88] During the criminal investigation, the Allegheny County Jail recorded thousands of inmate telephone calls. The United States used some of these calls as evidence in the racketeering case. The defendants argued "the monitoring and recording of their telephone conversations impinged upon their First Amendment rights to free speech and to be free from unjustified government interference with communication."[89]

The court denied the motion to suppress finding no First Amendment violation. Describing the alleged First Amendment right as the right "to communicate with people outside prison walls,"

the Court explained inmates could receive visitors and send mail to protect this right.[90] The court further explained courts generally accord prisons "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."[91] The court found the prison's policy of monitoring and recording phone calls—absent calls with inmates' attorneys—is a rational limitation on free speech furthering a "legitimate interest in prison security."[92] The court also rejected the defendants' Fourth Amendment argument, explaining "inmates have no expectation of privacy when making telephone calls from a prison telephone."[93]

Mr. Fennell has no claim against Officer Horvath and Examiner Harman under the First Amendment for listening to his phone calls. While not in the context of a § 1983 action, courts in our Circuit recognize prison inmates do not have a First Amendment right of freedom from monitoring and recording their phone calls, excepting calls with inmates' attorneys. Mr. Fennell does not allege Officer Horvath and Examiner Harman listened to calls with his attorney. Mr. Fennell cites two district court cases outside our Circuit from over forty years ago to support his argument.[94] But under the law in our Circuit, Mr. Fennell's First Amendment claim fails. Even assuming Mr. Fennell sues under the Fourth Amendment, his claim still fails as he has no reasonable expectation of privacy for his prison phone calls.

We dismiss Mr. Fennell's claims against Officer Horvath and Examiner Harman for listening to his phone calls.

B. **Mr. Fennell pleads a claim against Officer Horvath for violating his Sixth Amendment right to counsel.**

Mr. Fennell alleges Officer Horvath violated his Sixth Amendment right to counsel during the August 13, 2018 interrogation. Officer Horvath argues Mr. Fennell has no right to counsel during internal disciplinary investigations.

The Sixth Amendment affords Mr. Fennell the right "to effective assistance of counsel."[95] The Sixth Amendment attaches "only at or after the initiation of adversary judicial proceedings against the defendant" through a formal charge, preliminary hearing, indictment, information, or arraignment.[96] The Sixth Amendment "serves to safeguard the adversarial process by ensuring that once the right to counsel has attached the accused 'need not stand alone against the State' at any 'critical stage' of the aggregate proceedings against him."[97] Under the Sixth Amendment, a pretrial detainee like Mr. Fennell "has a right to utilize counsel to defend against a criminal case that the state has brought against him."[98] But the Sixth Amendment right to counsel does not apply to prison disciplinary proceedings unrelated to an inmate's criminal charges.[99]

Mr. Fennell alleges Officer Horvath denied him counsel during an interrogation concerning "illegal affairs."[100] As we explained in denying Officer Horvath's motion to dismiss the initial complaint, Mr. Fennell does not allege Officer Horvath interrogated him concerning an internal disciplinary matter.[101] Mr. Fennell only alleges Officer Horvath interrogated him concerning "illegal dealings" and "illegal affairs."[102] Construing his allegations liberally, Mr. Fennell alleges Officer Horvath interrogated him concerning criminal proceedings for which he faced trial. Viewing the allegations in the light most favorable to Mr. Fennell, we cannot conclusively find Officer Horvath interrogated Mr. Fennell concerning "an internal prison security investigation" based solely on the allegations in his Amended Complaint.[103] We deny Officer Horvath's motion to dismiss Mr. Fennell's Sixth Amendment claim.

C. **We dismiss Mr. Fennell's Ninth Amendment claims against Officers Colarusso, Kozma, Walker, Santos, Castro, and Patterson.**

Mr. Fennell alleges Officer Colarusso violated his Ninth Amendment rights by "disparaging and causing assaults and labeling [Mr. Fennell] as a snitch[.]"[104] Mr. Fennell also

sues Officers Kozma, Walker, Santos, Castro, and Patterson under the Ninth Amendment for using "disparaging verbal assaulting remarks[.]"[105]

The Ninth Amendment provides "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."[106] The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law, and does not independently secure a constitutional right for purposes of pursuing a civil rights claim."[107]

Mr. Fennell concedes his Ninth Amendment claims are duplicative of his Eighth Amendment claims.[108]

We dismiss Mr. Fennell's Ninth Amendment claims against Officers Colarusso, Kozma, Walker, Santos, Castro, and Patterson with prejudice.

**D.    We dismiss Mr. Fennell's Thirteenth Amendment claims against Officers Horvath, Santiago, Parsons, Giazono, Wagner, and Shultz, and Lieutenants Heinrich and Cruz.**

Mr. Fennell sues Officer Horvath under the Thirteenth Amendment for preventing him from ending the August 13, 2018 interrogation.[109] He sues Officers Santiago, Parsons, Giazono, Wagner, and Shultz, and Lieutenants Heinrich and Cruz for violating his Thirteenth Amendment rights when they forced him to comply with their orders during the December 6, 2018 strip search in his cell. Defendants argue Mr. Fennell fails to state a claim under the Thirteenth Amendment since he fails to allege forced labor.

The Thirteenth Amendment provides "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States[.]"[110] The Supreme Court described:

The primary purpose of the Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."[111]

Our Court of Appeals explained "in every case in which [it] has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."[112] In *Amnesty America v. County of Allegheny*, the court rejected the plaintiff's claim police officers violated the Thirteenth Amendment when they forced the plaintiffs to "stand or walk" when they arrested the plaintiffs.[113]

Mr. Fennell does not allege Defendants compelled him to work against his will. Mr. Fennell argues compulsion to comply with orders amounts to forced labor. But we find no authority supporting his argument. Being required to answer questions, absent further facts, is not unconstitutional forced labor under the Thirteenth Amendment.

We dismiss Mr. Fennell's Thirteenth Amendment claims against Officers Horvath, Santiago, Parsons, Giazono, Wagner, and Shultz, and Lieutenants Heinrich and Cruz.

**E.      We grant in part and deny in part Mr. Fennell's claims of unconstitutional prison conditions.**

Mr. Fennell sues Officer Colarusso under the Eighth Amendment for (1) labeling him a "snitch," (2) threatening Mr. Fennell and his family, (3) spraying him with a mace gun, (4) filing false misconduct reports, and (5) paying an inmate to assault Mr. Fennell with a knife.

Mr. Fennell also sues Lieutenants Cruz and Heinrich, and Officers Giazono, Parsons, Shultz, and Wagner for violating his Eighth Amendment rights during the December 6, 2018 strip search.

He also sues Officers Kozma, Walker, Santos, Castro, and Patterson for verbally abusing him.[114]

**1.      We analyze pretrial detainees' claims for unconstitutional prison conditions under the Fourteenth Amendment.**

While Mr. Fennell alleges Eighth Amendment claims, we analyze these claims under the Fourteenth Amendment. Mr. Fennell alleges his status as a pretrial detainee at Northampton County Prison.[115] "Our precedent is clear that while the detention of sentenced inmates is governed by the Eighth Amendment, the treatment of pretrial detainees is governed by the Due Process Clause."[116] A pretrial detainee's claims for unconstitutional prison conditions "are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment."[117] As the Fourteenth Amendment guarantees Mr. Fennell protections at least as great as those guaranteed by the Eighth Amendment, Eighth Amendment authority is relevant to Mr. Fennell's claims. To state a claim under the Eighth Amendment, Mr. Fennell must allege Defendants "were deliberately indifferent to a substantial risk of serious harm."[118]

But as a pretrial detainee, the Fourteenth Amendment guarantees Mr. Fennell certain protections above the Eighth Amendment. Under the Due Process Clause, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law."[119] Our Court of Appeals explained conditions amount to "punishment" when "there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."[120]

Defendants move to dismiss arguing Mr. Fennell fails to state a claim for unconstitutional prison conditions. We analyze his claims as follows: (1) claims against Officer Colarusso; (2) claims against Lieutenants Cruz and Heinrich, and Officers Giazono, Parsons, Shultz, Santiago,

and Wagner for the December 6, 2018 strip search; and (3) claims against Officers Kozuma, Walker, Santos, Castro, and Patterson for verbal abuse.

> **2. We grant in part and deny in part Officer Colarusso's motion to dismiss Mr. Fennell's unconstitutional prison condition claims.**

> **a. Mr. Fennell pleads a claim against Officer Colarusso for labeling him a "snitch."**

Mr. Fennell alleges Officer Colarusso violated his constitutional rights by labeling him a "snitch." Officer Colarusso argues this behavior does not constitute a constitutional violation.

In *Robinson v. Danberg*, the plaintiff sued under the Eighth Amendment after prison guards labeled him a "snitch."[121] After receiving the label, other inmates told the plaintiff "snitches get stiches" and threatened to stab the plaintiff.[122] Judge Robinson in the District of Delaware, recognizing the "serious implications of being labeled a 'snitch' in prison," found the plaintiff adequately stated an Eighth Amendment claim.[123]

In *Hendrickson v. Emergency Medical Services*, the plaintiff sued prison officials under the Eighth Amendment alleging the officials labeled him a "snitch."[124] Judge Cahn explained "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."[125] Judge Cahn denied summary judgment for defendants holding the plaintiff raised a factual issue as to whether the defendants labeled him a snitch "in front of other inmates and did so knowing that this placed Plaintiff at a substantial risk of serious harm."[126]

Mr. Fennell alleges Officer Colarusso called him "snitch" to "initiate assaults, attacks and unwanted relations with other inmates."[127] He called Mr. Fennell a "snitch" fourteen times in front of an entire prison unit and encouraged other inmates to call Mr. Fennell a "snitch."[128] He also

alleges Officer Colarusso paid an inmate to stab Mr. Fennell, allowing an inference Officer Colarusso knew his behavior placed Mr. Fennell at risk of harm.[129] Mr. Fennell plausibly alleges Officer Colarusso labeled him a "snitch" knowing he placed Mr. Fennell "at a substantial risk of serious harm."

Mr. Fennell states a Fourteenth Amendment claim against Officer Colarusso for labeling him a "snitch."

### b. Mr. Fennell fails to plead a claim for Officer Colarusso's verbal threats.

Mr. Fennell sues Officer Colarusso for verbally threatening him.[130] Regardless how serious the threat, Mr. Fennell cannot state a claim for unconstitutional prison conditions under either the Eighth Amendment or Fourteenth Amendment alleging only verbal harassment or threats.[131] We dismiss Mr. Fennell's Fourteenth Amendment claim against Officer Colarusso based on verbal threats to him and his family.

### c. Mr. Fennell pleads a claim against Officer Colarusso for attempting to spray Mr. Fennell with a mace gun.

Mr. Fennell alleges Officer Colarusso violated his constitutional rights when he sprayed mace in his direction. Officer Colarusso argues Mr. Fennell fails to state a claim.

In *Goenaga v. Macdona*, the plaintiff alleged prison officials violated his Eighth Amendment rights when they maced him twice.[132] The prison guards argued they did not violate the plaintiff's constitutional rights since the plaintiff suffered no injury. Judge Conaboy denied the defendants' motion to dismiss explaining in determining excessive force under the Eighth Amendment, the court asks "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"[133] Judge Conaboy recognized "[i]t is a violation of the Eighth

Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."[134] Judge Conaboy held the plaintiff plausibly alleged the prison guards maced him "maliciously and sadistically for the very purpose of causing harm" rather than to restore discipline.[135]

In *Robinson v. Danberg*, the plaintiff alleged Eighth Amendment excessive force when a prison guard maced him while locked in his cell.[136] The district court granted summary judgment for the prison official finding use of mace constituted *de minimis* force. Our Court of Appeals reversed the grant of summary judgment. The court explained excessive force in a prison context rises to an Eighth Amendment violation when applied "maliciously and sadistically for the very purpose of causing harm" instead of "in a good faith effort to maintain or restore discipline."[137] The court explained the prison official had "no legitimate penological reason" for using mace since the plaintiff "was locked in his cell and posed no imminent threat to staff and inmates at the time he was allegedly maced."[138]

Mr. Fennell alleges on August 23, 2018, Officer Colarusso fired a mace gun in his direction but Mr. Fennell dodged the spray.[139] Mr. Fennell alleges Officer Colarusso sprayed him while locked in his cell, shortly after Officer Colarusso called him a "snitch," threatened to kill his family, and attempted to watch him urinate.[140] Mr. Fennell alleges he was locked in a cell and posed no threat at the time. Considering the surrounding circumstances, Mr. Fennell plausibly alleges Officer Colarusso used his mace gun to cause harm.

We deny Officer Colarusso's motion to dismiss Mr. Fennell's claim for use of the mace gun.

        **d.**      **Mr. Fennell fails to plead a claim against Officer Colarusso for issuing false misconduct reports.**

Mr. Fennell argues Officer Colarusso violated his constitutional rights by issuing a false misconduct report on September 1, 2018.[141] In granting the defendants summary judgment for the plaintiff's Eighth Amendment claims alleging false misconduct reports, Judge Brody explained "[f]alse misconduct charges themselves do not constitute the denial of 'basic human needs, such as food, clothing, shelter, sanitation, medical care and personal safety.'"[142] Neither can Mr. Fennell state a claim under the Fourteenth Amendment for a false misconduct report.[143] We dismiss his claim against Officer Colarusso for issuing false misconduct reports.

        **e.**      **Mr. Fennell pleads a claim against Officer Colarusso for paying an inmate to stab him.**

Mr. Fennell sues Officer Colarusso alleging he paid another inmate to stab Mr. Fennell with a knife.[144] Officer Colarusso argues Mr. Fennell fails to state a claim.

In *Murphy v. New Jersey Department of Corrections*, the plaintiff sued prison guards under the Eighth Amendment alleging the prison guards paid other inmates to attack the plaintiff.[145] The court explained under the Eighth Amendment "gratuitously allowing the beating . . . of one prisoner by another serves no 'legitimate penological objective.'"[146] The court denied the prison guards' motion to dismiss the plaintiff's Eighth Amendment claim.

Mr. Fennell alleges Officer Colarusso asked other inmates to assault him in October 2018. On October 25, 2018, Officer Colarusso asked other inmates "who wants to get paid" to assault Mr. Fennell.[147] Mr. Fennell then alleges Officer Colarusso paid an inmate to stab him with a knife.[148]

Accepting his allegations as true as we must do at this stage, Mr. Fennell states a Fourteenth Amendment claim against Officer Colarusso for paying an inmate to stab him. We deny Officer Colarusso's motion to dismiss Mr. Fennell's claim for paying an inmate to stab him with a knife.

> **3.** **We grant in part and deny in part the motions of Lieutenants Cruz and Heinrich, and Officers Giazono, Wagner, Parsons, Santiago, and Shultz to dismiss Mr. Fennell's claims for the December 6, 2018 strip search.**
>
> > **a.** **We deny the motions of Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner to dismiss Mr. Fennell's claims for the December 6, 2018 strip search.**

Mr. Fennell alleges constitutional violations against Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner for the December 6, 2018 strip search. He alleges Officer Giazono stabbed him with a handcuff key.[149] He alleges Lieutenant Heinrich threatened him with a police dog and told him, "Maybe you should get another lawsuit on us."[150] He alleges Wagner threatened to use excessive force if he failed to lift his genitals.[151] He also alleges Lieutenant Cruz held a taser gun to his head during the strip search and ordered a nurse to move his genitals in a sexual manner.[152] These Defendants left Mr. Fennell in his cell with the heat turned to ninety degrees.[153] When he left, Officer Giazono spit in Mr. Fennell's food.[154]

A strip search alone does not violate the Eighth Amendment.[155] But "[w]here a prisoner alleges that the strip search was conducted in a physically abusive manner, the Eighth Amendment applies."[156] In *Armstead v. Mee*, the court held the plaintiff stated an Eighth Amendment excessive force claim against a prison guard who punched and kicked the plaintiff during a strip search.[157]

Defendants argue they did not violate Mr. Fennell's constitutional rights because they strip searched Mr. Fennell for a proper purpose. But Mr. Fennell alleges during the strip search, Lieutenant Heinrich said to him, "Maybe you should just get another lawsuit on us."[158] Mr. Fennell raises an inference Defendants strip searched him in retaliation for his November 14, 2018 lawsuit.

We do not agree based on Mr. Fennell's allegations Defendants strip searched him for a proper penological purpose. He alleges the officers left him naked in his cell and increased the heat to ninety degrees. He alleges Officer Giazono spit in his food after the search. He also alleges physical abuse since Officer Giazono stabbed him with a handcuff key during the search. We cannot find at this stage based on Mr. Fennell's allegations Defendants strip searched him on December 6, 2018 for a proper purpose. Mr. Fennell states a claim for unconstitutional prison conditions concerning the December 6, 2018 strip search. We deny the motion of Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner to dismiss Mr. Fennell's claim for the December 6, 2018 strip search.

### b. We grant the motions of Officers Parsons, Santiago and Shultz to dismiss claims for the December 6, 2018 strip search.

Officers Parsons, Santiago and Shultz move to dismiss Mr. Fennell's claims concerning the December 6, 2018 strip search. To state a claim against an individual under § 1983, Mr. Fennell must allege the individual personal involvement in the constitutional violation.[159] Mr. Fennell fails to allege facts showing the involvement of Officers Parson, Santiago, and Shultz in the December 6, 2018 strip search. We grant the motion of Officers Parson, Santiago, and Shultz to dismiss Mr. Fennell's claims against them.

### 4. We dismiss Mr. Fennell's claims for unconstitutional prison conditions against Officers Kozma, Walker, Santos, Castro and Patterson.

Mr. Fennell sues Officers Kozma, Walker, Santos, Castro, and Patterson for using "disparaging verbal assaulting remarks."[160] As explained, Mr. Fennell cannot state a claim for unconstitutional prison conditions under the Eighth Amendment or Fourteenth Amendment alleging only verbal harassment or threats.[161] We dismiss his conditions of confinement claims against Officers Kozma, Walker, Santos, Castro, and Patterson.

**F.      Mr. Fennell fails to plead a claim for deprivation of due process against Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew.**

Mr. Fennell sues Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew under the Fourteenth Amendment for denying him a misconduct hearing to challenge Officer Patterson's January 10, 2019 misconduct report.[162]

Under the Fourteenth Amendment, a prisoner facing a deprivation of liberty has a due process right to a disciplinary hearing with certain procedural protections.[163] But the right is not triggered unless the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[164] In *Henderson v. Kerns-Barr*, our Court of Appeals affirmed the district court's dismissal of a prisoner's due process claim alleging a defective misconduct hearing, explaining ninety days of solitary confinement did not impose an "atypical and significant hardship" sufficient to trigger the Fourteenth Amendment.[165]

Mr. Fennell alleges he spent ten days in solitary confinement after Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew denied him a misconduct hearing for Officer Patterson's January 10, 2019 misconduct report.[166] Assuming these Defendants denied Mr. Fennell a hearing, the length of his confinement is insufficient to trigger the Fourteenth Amendment. We grant the motion of Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew to dismiss Mr. Fennell's due process claim.

**G.      We grant in part and deny in part the motions of Officers Horvath, Giazono, Wagner, Kozma, Walker, Patterson, Santos, and Castro, Lieutenants Cruz and Heinrich, and Captain Collins to dismiss Mr. Fennell's retaliation claims.[167]**

Mr. Fennell alleges retaliation against several Defendants. He alleges Officer Horvath retaliated against him for invoking his Fifth Amendment rights by falsifying a misconduct report following the August 13, 2018 interrogation.[168] He alleges Lieutenants Cruz and Heinrich, and

Officers Giazono and Wagner retaliated against him by strip searching him on December 6, 2018 for filing his November 14, 2018 lawsuit.[169] He also alleges Officers Kozma, Walker, Patterson, Santos and Castro, and Captain Collins all retaliated against him.

To state a claim for retaliation, Mr. Fennell must allege "(1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of the prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor' in the decision to take that action."[170] Filing a lawsuit against prison officials constitutes constitutionally protected activity.[171]

Mr. Fennell can show a causal connection with "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[172] "[C]ourts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation."[173]

### 1. Mr. Fennell states a retaliation claim against Officer Horvath for issuing a misconduct report after the August 13, 2018 interrogation.

He alleges Officer Horvath retaliated against him by falsifying a misconduct report against him for invoking his Fifth Amendment right during the August 13, 2018 interrogation.[174] While he does not allege a timeframe between the protected conduct and the false misconduct report, he alleges Officer Horvath issued the report "after [Mr. Fennell] left" the interrogation room.[175] Viewing the allegations in the light most favorable to Mr. Fennell, we find he adequately states a retaliation claim against Officer Horvath.

## 2.     Mr. Fennell states a retaliation claim against Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner for the December 6, 2018 strip search.

Mr. Fennell sues Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner alleging they strip searched him on December 6, 2018 in retaliation for his November 14, 2018 lawsuit. These Defendants argue Mr. Fennell fails to state a claim.

Mr. Fennell alleges he filed a lawsuit against prison officials on November 14, 2018. He alleges on December 6, 2018, Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner strip searched him in his cell in retaliation for filing his lawsuit. During the search, Officer Giazono stabbed him with a handcuff key. Lieutenant Heinrich threatened him with a police dog. Lieutenant Cruz pointed a taser gun at his head, handcuffed him, and ordered a nurse to manipulate his genitals in a sexual manner. Officer Wagner threatened him with violence if he disobeyed.

While the search occurred several weeks after he filed his lawsuit, Lieutenant Heinrich told him during the search "Maybe you should just get another lawsuit on us," allowing an inference Defendants retaliated against him for filing his November 14, 2018 lawsuit.[176] At this stage, Mr. Fennell states a retaliation claim against Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner for the December 6, 2018 strip search.

## 3.     Mr. Fennell fails to plead a retaliation claim against Officer Kozma for the December 19, 2018 incident.[177]

Mr. Fennell alleges retaliation when Officer Kozma on December 19, 2018 (1) forced Mr. Fennell to give Officer Kozma his only bar of soap and (2) falsified a misconduct report against Mr. Fennell. Mr. Fennell merely concludes Kozma retaliated against him without any allegations supporting his claim. For instance, he does not allege Officer Kozma knew about his November 14, 2018 lawsuit or any other constitutionally protected conduct allowing an inference he retaliated against Mr. Fennell. We dismiss his retaliation claim against Officer Kozma.

**4.**     **Mr. Fennell fails to plead a retaliation claim against Officer Walker for the December 21, 2018 incident.[178]**

Mr. Fennell alleges Officer Walker denied him cleaning supplies and falsified a misconduct report against him on December 21, 2018.[179] But Mr. Fennell merely concludes retaliation without allegations supporting his claim. We dismiss Mr. Fennell's retaliation claim against Officer Walker.

**5.**     **Mr. Fennell fails to plead a retaliation claim against Captain Collins for failing to investigate the January 14, 2019 incident.**

Mr. Fennell alleges retaliation when Captain Collins failed to respond to Mr. Fennell's complaint about "Colarusso Rules You" written on his cell wall on January 14, 2019.[180] Mr. Fennell fails to allege facts showing retaliation. He merely concludes Captain Collins failed to respond to his complaint "out of retaliation" for his lawsuit. We dismiss Mr. Fennell's retaliation claim against Captain Collins.

**6.**     **Mr. Fennell fails to plead a retaliation claim against Officer Patterson for the falsified misconduct report on January 10, 2019.**

Mr. Fennell alleges on January 10, 2019, Officer Patterson falsified a misconduct report against him to send him to solitary confinement. Mr. Fennell merely concludes Officer Patterson retaliated against him without facts to support the claim. We dismiss Mr. Fennell's retaliation claim against Officer Patterson.

**7.**     **We dismiss Mr. Fennell's retaliation claims against Officers Santos and Castro for the January 12, 2019 incident.**

Mr. Fennell alleges on January 12, 2019, Officers Santos and Castro retaliated against him for filing his November 14, 2018 lawsuit by waking him and threatening him. But Mr. Fennell merely concludes Santos and Castro retaliated against him without facts to support a claim of retaliation. We dismiss Mr. Fennell's retaliation claims against Officers Santos and Castro.

**8.    We reject Defendants' argument the *Heck* doctrine bars Mr. Fennell's retaliation claims.**

Defendants argue we should dismiss Mr. Fennell's retaliation claims for false misconduct reports because the *Heck* doctrine bars these claims. In *Heck v. Humphrey*, the Supreme Court held a prisoner cannot sue under § 1983 alleging an unconstitutional conviction or imprisonment "until the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."[181] The Supreme Court extended the *Heck* doctrine to claims where success "necessarily imply the invalidity of the deprivation of his good-time credits."[182] Mr. Fennell's claims do not call into question his underlying conviction or sentence. He does not allege the deprivation of good-time credits. The *Heck* doctrine does not bar his retaliation claims.

Defendants also we cannot hold them liable if they found Mr. Fennell guilty of the underlying misconduct charge. They argue we can "infer[] from his Complaint that the misconducts resulted in a finding of guilt and Plaintiff served additional time in discipline as a result."[183] But Mr. Fennell alleges Defendants falsified misconduct reports against him. We draw all inferences at this stage in favor of Mr. Fennell.[184] Defendants' argument fails.

**H.    Mr. Fennell fails to plead a conspiracy claim against Officer Horvath, Examiner Harman, Lieutenants Rinker, Chlewboski, and Warning, Captains Collins and Werley, Coordinator Herstich, Warden Penchishen, Deputy Warden Bartholomew, and Officers Kozma, Walker, Santos, Castro, and Patterson.**

Mr. Fennell alleges a conspiracy between Officer Horvath and Examiner Harman to give inmates excessive punishment.[185] He alleges Lieutenants Rinker, Chlewboski, and Warning, Captains Collins and Werley, Coordinator Herstich, Examiner Harman, Warden Penchishen, and

Deputy Warden Bartholomew conspired to cover up abuse.[186] Mr. Fennell alleges a conspiracy amongst Officers Kozma, Walker, Santos, Castro, and Patterson without supporting allegations.[187]

To support a conspiracy claim, Mr. Fennell must allege facts showing an agreement.[188] Mr. Fennell fails to allege any facts showing an agreement to support any of his conspiracy claims. He merely concludes these Defendants conspired against him. Mr. Fennell fails to state a conspiracy claim. We dismiss his conspiracy claims against Officer Horvath, Examiner Harman, Lieutenants Rinker, Chlewboski, and Warning, Captains Collins and Werley, Coordinator Herstich, Warden Penchishen, Deputy Warden Bartholomew, and Officers Kozma, Walker, Santos, Castro, and Patterson.[189]

I.    **We dismiss Mr. Fennell's claims against individual Defendants in their official capacities.**

Defendants argue we should dismiss Mr. Fennell's official capacity claims since Mr. Fennell does not sue Northampton County. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."[190] Mr. Fennell essentially attempts sue Northampton County despite failing to name the county as a defendant. To bring a § 1983 claim against a municipality, Mr. Fennell must allege a policy or custom caused the constitutional deprivation.[191] Mr. Fennell does not allege a policy or custom causing the alleged constitutional violations. We dismiss Mr. Fennell's claims against Defendants in their official capacities.

**III.   Conclusion.**

In an accompanying Order, we grant in part and deny in part Defendants' motion to dismiss Mr. Fennell's Amended Complaint.

We grant the motion of Officer Horvath and Examiner Harman to dismiss Mr. Fennell's First Amendment claims for listening to his phone calls.

We deny Officer Horvath's motion to dismiss Mr. Fennell's Sixth Amendment claim. Officer Horvath does not move to dismiss the Fifth Amendment claim.

We grant the motion of Officers Colarusso, Kozma, Walker, Santos, Castro, and Patterson to dismiss Mr. Fennell's Ninth Amendment claims.

We grant the motion of Officers Horvath, Santiago, Parsons, Giazono, Wagner, and Shultz, and Lieutenants Heinrich and Cruz to dismiss the Thirteenth Amendment claims.

We grant in part and deny in part Defendants' motion to dismiss unconstitutional prison conditions claims under the Fourteenth Amendment:

- We deny Officer Colarusso's motion to dismiss Mr. Fennell's claim for labeling him a "snitch."

- We grant Officer Colarusso's motion to dismiss the claim for verbal threats.

- We deny Officer Colarusso's motion to dismiss the claim for spraying mace.

- We grant Officer Colarusso's motion to dismiss claims alleging false misconducts.

- We deny Officer Colarusso's motion to dismiss the claim for paying an inmate to stab Mr. Fennell.

- We deny the motion of Lieutenants Cruz and Heinrich, and Officers Giazono and Wagner to dismiss Mr. Fennell's unconstitutional prison conditions claim for the December 6, 2018 strip search.

- We grant the motion of Officers Parson, Santiago, and Shultz to dismiss the claims against them concerning the December 6, 2018 strip search.

- We grant the motion of Officers Kozma, Walker, Santos, Castro, and Patterson to dismiss Mr. Fennell's unconstitutional prison conditions claims.

We dismiss Mr. Fennell's Fourteenth Amendment deprivation of due process claims against Examiner Harman, Coordinator Herstich, and Deputy Warden Bartholomew.

We grant in part and deny in part the motions to dismiss Mr. Fennell's retaliation claims:

- We deny Officer Horvath's motion to dismiss Mr. Fennell's retaliation claim for invoking his Fifth Amendment rights.
- We deny the motion of Lieutenants Heinrich and Cruz, and Officers Giazono and Wagner to dismiss the retaliation claim for the December 6, 2018 strip search.
- We grant the motion of Officers Kozma, Walker, Patterson, Santos, and Castro, and Captain Collins to dismiss the retaliation claims against them.

We grant the motion of Officer Horvath, Examiner Harman, Lieutenants Rinker, Chlewboski, Warning, Captains Collins and Werley, Coordinator Herstich, Warden Penchishen, Deputy Warden Bartholomew, and Officers Kozma, Walker, Santos, Castro, and Patterson to dismiss Mr. Fennell's conspiracy claims.

We grant Defendants' motion to dismiss Mr. Fennell's official capacity claims.

---

[1] ECF Doc. No. 28, at p. 3.

[2] *Id.* at p. 6.

[3] ECF Doc. No. 28-1, at p. 4.

[4] *Id.* at p. 16.

[5] ECF Doc. No. 28, at p. 2.

[6] *Id.* at pp. 4-7.

[7] *Id.*

[8] ECF Doc. No. 28-1, at p. 1.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at p. 3.

[16] *Id.*

[17] *Id.*

[18] *Id.* at p. 4.

[19] *Id.*

[20] *Id.*

[21] *Id.* at p. 5.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at p. 6.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at p. 7.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.* at pp. 7-8.

[42] *Id.* at p. 8.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at pp. 8-9.

[47] *Id.* at p. 9.

[48] *Id.*

[49] *Id.*

[50] *Id.* at p. 10.

[51] *Id.* Mr. Fennell filed the complaint on November 9, 2018. ECF Doc. No. 2. He served Defendants on November 14, 2018. ECF Doc. No. 7.

[52] ECF Doc. No. 28-1, at p. 10.

[53] *Id.*

[54] *Id.*

[55] *Id.* at p. 11.

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at pp. 11-12.

[64] *Id.* at p. 12.

[65] *Id.*

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at pp. 12-13.

[70] *Id.*

[71] *Id.* at p. 13.

[72] *Id.* at pp. 13, 16.

[73] *Id.* at p. 13.

[74] *Id.*

[75] ECF Doc. No. 26.

[76] *Id.*

[77] ECF Doc. No. 28.

[78] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[79] ECF Doc. No. 33. We granted Officer Santos' motion to join Defendants' motion to dismiss. ECF Doc. No. 45.

[80] ECF Doc. No. 26.

[81] *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

[82] *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988)).

[83] *Id.* (quoting *Rode,* 845 F.2d at 1207).

[84] ECF Doc. No. 28-1, at p. 1.

[85] *United States v. Korbe*, No. 09-05, 2010 WL 2776337, at *1 (W.D. Pa. July 14, 2010).

[86] *Id.* at *6.

[87] *Id.*

[88] *Id.* at *1.

[89] *Id.* at *8.

[90] *Id.*

[91] *Id.* at *9.

[92] *Id.*

[93] *Id.* at *8.

[94] *See Moore v. Janing*, 427 F. Supp. 567, 576 (D. Neb. 1976); *Brenneman v. Madigan*, 343 F. Supp. 128, 141 (N.D. Cal. 1972).

[95] *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 792 (3d Cir. 2000).

[96] *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 892 (3d Cir. 1999).

[97] *Dellavecchia v. Sec'y Pennsylvania Dep't of Corr.*, 819 F.3d 682, 693 (3d Cir. 2016).

[98] *Prater v. City of Philadelphia*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015).

[99] *Dantzler v. Beard*, No. 05-1727, 2006 WL 3694515, at *4 (W.D. Pa. Dec. 13, 2006); *Smith v. Holt*, No. 05-1889, 2006 WL 485352, at *2 (M.D. Pa. Feb. 28, 2006) (citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)).

[100] ECF Doc. No. 28-1, at p. 1.

[101] ECF Doc. No. 25, at p. 4.

[102] ECF Doc. No. 28-1, at p. 1.

[103] ECF Doc. No. 33, at p. 8.

[104] ECF Doc. No. 28-1, at p. 10.

[105] *Id.* at p. 15.

[106] U.S. Const. amend. IX.

[107] *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999); *see also Hill v. Bogan*, No. 18-1605, 2018 WL 2445683, at *3 (E.D. Pa. May 31, 2018) ("Courts have generally rejected Ninth Amendment claims raised by prisoners based on complaints about prison conditions[.]").

[108] ECF Doc. No. 38, at p. 9.

[109] ECF Doc. No. 28-1, at p. 3.

[110] U.S. Const. amend XIII.

[111] *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting *Butler v. Perry*, 240 U.S. 328, 331 (1916)).

[112] *Burrell v. Loungo*, 750 F. App'x 149, 159 (3d Cir. 2018) (quoting *Kozminski*, 487 U.S. at 943).

[113] *Amnesty Am. v. Cty. of Allegheny*, 822 F. Supp. 297, 300 (W.D. Pa. 1993).

[114] ECF Doc. No. 28-1, at 15.

[115] ECF Doc. No. 28, at p. 8.

[116] *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 551 (1979)).

[117] *Edwards v. Northampton Cty.*, No. 12-5323, 2016 WL 7654661, at *4 (E.D. Pa. Apr. 29, 2016), *aff'd*, 663 F. App'x 132 (3d Cir. 2016) (citing *Keller v. Cty. Of Bucks*, 209 F. App'x 201, 205 (3d Cir. 2006)).

[118] *Johnson v. Criminal Justice Center*, No. 19-1490, 2019 WL 1754753, at *2 (E.D. Pa. Apr. 18, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).

[119] *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012).

[120] *Id.* (quoting *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)).

[121] *Robinson v. Danberg*, 729 F. Supp. 2d 666, 684 (D. Del. 2010).

[122] *Id.*

[123] *Id.*

[124] *Hendrickson v. Emergency Med. Servs.*, No. 95-4392, 1996 WL 472418, at *5 (E.D. Pa. Aug. 20, 1996).

[125] *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

[126] *Id.*

[127] ECF Doc. No. 28-1, at p. 5.

[128] *Id.* at p. 6.

[129] *Id.* at p. 10.

[130] *Id.* at p. 5.

[131] *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012); *Young v. Medden*, No. 03-5432, 2006 WL 456274, at *22 (E.D. Pa. Feb. 23, 2006) ("Numerous courts in this district have held that verbal harassment or threats, standing alone, do not state a constitutional violation."); *Quiero v. Muniz*, No. 14-225, 2015 WL 13738994, at *5 (M.D. Pa. Aug. 3, 2015) ("Allegations of verbal

abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

[132] *Goenaga v. MacDonald*, No. 14-2496, 2017 WL 1178072, at *5 (M.D. Pa. Mar. 30, 2017).

[133] *Id.* at *4 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

[134] *Id.* at *5.

[135] *Id.* at *6 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

[136] *Robinson v. Danberg*, 673 F. App'x 205, 212 (3d Cir. 2016).

[137] *Id.* at 211.

[138] *Id.* at 212.

[139] ECF Doc. No. 28-1, at p. 6.

[140] *Id.* at p. 5.

[141] *Id.* at p. 7.

[142] *Booth v. Pence*, 354 F. Supp. 2d 553, 559 (E.D. Pa.), *aff'd*, 141 F. App'x 66 (3d Cir. 2005) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)).

[143] *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (explaining "mere allegations of falsified evidence or misconduct reports, without more" are insufficient to state a claim under the Fourteenth Amendment).

[144] ECF Doc. No. 28-1, at p. 10.

[145] *Murphy v. New Jersey Dep't of Corr.*, No. 17-2632, 2017 WL 2482878, at *2 (D.N.J. June 8, 2017).

[146] *Id.* (quoting *Farmer*, 511 U.S. at 833 (1994)).

[147] ECF Doc. No. 28-1, at p. 9.

[148] *Id.* at p. 10.

[149] *Id.* at p. 14.

[150] *Id.* at p. 10.

[151] *Id.* at p. 14.

[152] *Id.* at p. 11.

[153] *Id.*

[154] *Id.*

[155] *Jones v. Luzerne Cty. Corr. Facility*, No. 10-0359, 2010 WL 3338835, at *9 (M.D. Pa. Aug. 23, 2010) (dismissing Eighth Amendment claim alleging strip search in presence of other inmates caused humiliation).

[156] *Miller v. Trometter*, No. 11-811, 2012 WL 5933015, at *15 (M.D. Pa. Nov. 27, 2012) (citing *Jordan v. Cicchi*, 428 F. App'x 195, 199 (3d Cir. 2011)).

[157] *Armstead v. Mee*, No. 11-1740, 2011 WL 1792800, at *5 (D.N.J. May 9, 2011).

[158] ECF Doc. No. 28-1, at p. 10.

[159] *Evancho,* 423 F.3d at 353 (quoting *Rode,* 845 F.2d at 1207).

[160] ECF Doc. No. 28-1, at p. 15.

[161] *Dunbar*, 487 F. App'x at 723; *Young*, 2006 WL 456274, at *22 ("Numerous courts in this district have held that verbal harassment or threats, standing alone, do not state a constitutional violation."); *Quiero*, 2015 WL 13738994, at *5 ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial detainee or sentenced prisoner.").

[162] ECF Doc. No. 28-1, at p. 16.

[163] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

[164] *Dunbar*, 487 F. App'x 721, 724-25 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

[165] *Henderson v. Kerns-Barr*, 313 F. App'x 451, 452 (3d Cir. 2008) (citing *Sandin*, 515 U.S. at 484).

[166] ECF Doc. No. 28-1, at p. 14.

[167] Mr. Fennell argues he brings his retaliation claims under 42 U.S.C. § 1997d. We find no authority providing a private right of action under § 1997d. *See Chruby v. Kowaleski*, No. 11-225, 2012 WL 12875987, at *8 (W.D. Pa. June 5, 2012), *subsequently aff'd*, 534 F. App'x 156 (3d Cir. 2013) ("Although the Third Circuit has not addressed the issue, it appears that each court that has considered whether § 1997d grants a private right of action for an individual has found that it does not."). We will instead construe his complaint as alleging First Amendment and Fifth Amendment retaliation claims.

[168] ECF Doc. No. 28-1, at p. 3.

[169] *Id.* at p. 14.

[170] *Bistrian*, 696 F.3d at 376.

[171] *Garner v. City of Philadelphia*, No. 11-5960, 2013 WL 4401327, at *7 (E.D. Pa. Aug. 16, 2013).

[172] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[173] *Ransome v. Mooney*, No. 09-604, 2010 WL 4683779, at *7 (M.D. Pa. Oct. 1, 2010), *report and recommendation adopted*, No. 09-0604, 2010 WL 4681003 (M.D. Pa. Nov. 10, 2010); *see also Killen v. Nw. Human Servs., Inc.*, No. 06-4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) ("several weeks" between the conduct and retaliation not "unusually suggestive"); the *Conklin v. Warrington Twp.*, No. 06-2245, 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009) ("[T]emporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.").

[174] ECF Doc. No. 28-1, at p. 3.

[175] *Id.*

[176] *Id.* at p. 10.

[177] Mr. Fennell alleges the incident occurred on December 19, 2019. We believe Mr. Fennell alleges the incident occurred on December 19, 2018.

[178] Mr. Fennell alleges the incident occurred on December 21, 2019. We believe Mr. Fennell alleges the incident occurred on December 21, 2018.

[179] ECF Doc. No. 28-1, at p. 12.

[180] *Id.*

[181] *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

[182] *Edwards v. Balisok*, 520 U.S. 641, 646 (1997).

[183] ECF Doc. No. 33, at p. 18.

[184] *Tatis*, 882 F.3d at 426 (quoting *Sheridan*, 609 F.3d at 262 n.27) ("[W]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant.").

[185] ECF Doc. No. 28-1, at p. 4.

[186] *Id.* at p. 15.

[187] *Id.*

[188] *Real v. Dunkle*, No. 11-2071, 2012 WL 1392334, at *8 (M.D. Pa. Apr. 23, 2012) (quoting *Hammond v. Creative Fin. Planning Org., Inc.*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992)).

[189] Mr. Fennell also alleges claims under 42 U.S.C. § 1986 for failure to prevent a conspiracy. But if Mr. Fennell fails to allege a conspiracy, his claims under § 1986 similarly fail. *Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 409, 418 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996).

[190] *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

[191] *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 436 (E.D. Pa. 2015) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)).